ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 4 2005

CLERK, U.S. DISTRICT COURT
By_____

PLAINSCAPITAL BANK,           §
                              §
        Plaintiff,            §
                              §      Civil Action No. 3:05-CV-0469-M
v.                            §
                              §
ROBERT MALINA and DAVID LURIE,§
                              §
        Defendants.           §

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant David Lurie's Motion to Dismiss for Lack of Personal

Jurisdiction, dated June 13, 2005. The Court **DENIES** the Motion.

I. FACTUAL BACKGROUND

Defendant David Lurie is a 69-year-old retired businessman who resides in Jupiter,

Florida. Lurie is a limited partner in KLM Theatre Partners, L.P. ("KLM"), an entity involved in

the construction and operation of movie theaters. Lurie also has a sixteen-and-two-thirds percent

ownership interest in the general partner of KLM. Lurie took no role in the formation of the

partnership nor in the negotiation of the terms of the limited partnership agreement.

On July 9, 1999, Plaintiff PlainsCapital Bank ("PlainsCapital"), a Texas bank with its

principal place of business in Dallas, Texas, entered into a loan agreement (the "Loan

Agreement") with KLM, pursuant to which PlainsCapital loaned KLM $8 million. KLM

executed a promissory note to PlainsCapital (the "KLM Note"). Lurie understood that he, along

-1-

with Robert Malina and David Kline,[1] were expected to personally guarantee KLM's debt. The

Loan Agreement, dated July 9, 1999, which Lurie apparently signed,[2] requires Lurie, as a

guarantor, to periodically send financial statements and tax returns to PlainsCapital. Lurie signed

a separate guaranty agreement (the "Guaranty") the same day. Lurie signed both documents in

New York. Before doing so, Lurie submitted a personal financial statement to PlainsCapital. In

July 2000, PlainsCapital loaned KLM an additional $818,831.

Plaintiff alleges that KLM has been in default on its loan obligations since at least

December 29, 2004; as a result, Plaintiff gave KLM notice of default, accelerated the debt, and

demanded immediate payment from KLM of all amounts due. Plaintiff sued Malina, Lurie, and

Kline, as guarantors of KLM's debt. Plaintiff also sued Kline and Lurie for fraud. Lurie filed a

Motion to Dismiss for Lack of Personal Jurisdiction on June 13, 2005.

## II. STANDARD OF REVIEW

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of establishing personal jurisdiction over the nonresident. *Lewis v.

Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Lurie does not reside in Texas. Therefore, Plaintiff

has the burden of establishing personal jurisdiction over Lurie.

The Court may exercise personal jurisdiction over a nonresident defendant if (1) the

---

[1]David Kline was originally joined as a defendant in this lawsuit. The Court dismissed
Kline from the lawsuit pursuant to an Order dated September 8, 2005.

[2]In his brief, Lurie states that "Except for signing the Guaranty itself, Lurie had no role in
connection with the loan or the guaranty." This statement conflicts with the purported signature
of Lurie on the Loan Agreement, which Lurie does not expressly disavow. *See* Pl. App. at 53.

Texas long-arm statute creates personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Constitution's due process requirements. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because the Texas long-arm statute reaches to constitutional limits, the Court need only engage in the due process analysis. *Id.* at 470. Personal jurisdiction over a non-resident defendant comports with the requirements of due process if (1) the nonresident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Lewis*, 252 F.3d at 258.

Although "minimum contacts" may be established with a showing of specific jurisdiction or general jurisdiction, Plaintiff seeks to assert only specific jurisdiction over Lurie.[3] In order to assert specific jurisdiction over Lurie, Plaintiff must show that Lurie's contacts arise from, or are directly related to, the causes of action asserted. *Id.* The Court must conduct the minimum contacts analysis separately for each cause of action asserted because Plaintiff is obligated to secure jurisdiction over Lurie with respect to each claim brought. *See Dockery v. America's Platinum Privileges, Inc.*, 3:03-CV-1901-M, 2004 WL 1196067, at *1 (N.D. Tex. May 28, 2004) (Lynn, J.); *Denmark v. Tzimas*, 871 F. Supp. 261, 266 (E.D. La. 1994); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1069.7 (2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

Where, as here, the Court decides a motion to dismiss for lack of personal jurisdiction

---

[3]The Plaintiff does not allege continuous, systematic contacts with Texas that could support an exercise of general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

without an evidentiary hearing, a plaintiff may "satisfy its burden by presenting a prima facie case for jurisdiction." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). In determining whether a plaintiff has satisfied this burden, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.*

### III. ANALYSIS

The transactions that led to the execution of the Guaranty and the Loan Agreement, the terms of the Guaranty and the Loan Agreement, and the events that occurred subsequent to the execution of the Guaranty and the Loan Agreement form the primary basis for Plaintiff's contention that Lurie is subject to specific personal jurisdiction in Texas. Although Plaintiff does not allege that Lurie signed either document in Texas, Plaintiff notes that Lurie submitted personal financial statements to PlainsCapital before he signed the Guaranty and the Loan Agreement.[4] Both documents contain references to Texas. They each contain a Texas choice-of-law clause,[5] and the Loan Agreement requires Lurie periodically to send financial statements to Texas.[6] Plaintiff further alleges that, in the event of a default, Lurie was required to

---

[4] The financial statements, dated August 1, 1998, claimed that Lurie owned a home in Sagaponek, New York, and that he held "fully marketable" securities worth $3.7 million. Plaintiff alleges that these representations were false when made.

[5] Neither the Guaranty nor the Loan Agreement selects Texas as the forum where disputes related to either contract would be litigated.

[6] Plaintiff alleges that, under the terms of the KLM Note, KLM was required to make payments in Texas. The doctrine of alter ego has not been alleged, and Plaintiff has not shown why the jurisdictional contacts of KLM should be considered as establishing jurisdictional contacts for Lurie. *Cf. Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004)

-4-

pay under the Guaranty in Texas.[7] Lurie traveled to Texas five times between 2001 and 2004 to meet with representatives of PlainsCapital, at PlainsCapital's request, after problems began to develop with the KLM Note.

### A. Claim of Breach of the Guaranty

Lurie acknowledges that the Guaranty contains a Texas choice-of-law clause. The Fifth Circuit has recognized that the mere presence of a Texas choice-of-law clause in a contract does not, alone, support personal jurisdiction in an action based on the contract. *See Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985). In *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, however, the circuit held that a choice-of-law clause coupled with an expansive guaranty is sufficient to establish minimum contacts supporting personal jurisdiction. *See* 653 F.2d 921, 923 (5th Cir. 1981). In *Marathon*, the nonresident defendant contracted with a Texas corporation, and entered into a guaranty with the plaintiff that was to be governed by Texas law. *Id.* The Court in *Marathon* found jurisdiction by noting the effects of the terms of the guaranty. *See id.* ("His guaranty . . . contemplated advances of credit . . . with an open-ended

———————————

(holding that, if an individual is found to be an alter ego of a corporation, the corporation's jurisdictional contacts may be imputed to that individual). Therefore, the Court will not consider the acts and obligations of KLM in determining whether Lurie has sufficient contacts to confer jurisdiction over him in Texas.

[7]In his brief, Plaintiff does not allege that either the Guaranty or the Loan Agreement *expressly* require Lurie to perform on the Guaranty in Texas. Instead, Plaintiff argues that "the Guaranty is necessarily payable in Texas, the place where the bank has its principal office, the place designated in the Loan Agreement for all notices and deliveries, and the place expressly identified in the KLM Notes for payment." For the purposes of this Motion, however, the Court assumes that Lurie was to perform on the Guaranty in Texas. *See Gardemal,* 186 F.3d at 592 ("[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts . . . must be resolved in the plaintiff's favor.")

obligation . . . to stand good for those advances. . . . The effect of such a guaranty is to involve [the plaintiff] in each such advancement of credit . . . and purposefully to cause business activity, foreseeable by [the plaintiff] in the forum state.") Here, Lurie's contract contained an absolute guaranty to stand good for PlainsCaptial's advance of credit to KLM. *See* Pl. App. at 007 ("This is an absolute and continuing guaranty remaining in effect until the full and final payment and performance of the Guaranteed Obligations by Borrower or Guarantor.") This Guaranty, coupled with the Texas choice-of-law clause, will support personal jurisdiction over a claim related to the Guaranty. *Marathon*, 653 F.2d at 923; *accord Examination Mgmt. Servs., Inc. v. Partners for Ins., L.L.C.*, 03-CV-1665-B, 2005 U.S. Dist. LEXIS 1579, *10-12 (N.D. Tex. Feb. 3, 2005) (Boyle, J.).

Decisions by other district courts in this circuit support this analysis. In *Capstead Mortgage Corp. v. Sutter Mortgage Corp.*, the court found that a guaranty contract "contemplated a continuing relationship between the parties," and cited *Burger King Corp. v. Rudzewicz* to support its exercise of specific personal jurisdiction with respect to the plaintiff's contract claims. 3:95-CV-2827-G, 1997 U.S. Dist. LEXIS 16504, at *15 (N.D. Tex. Mar. 13, 1997) (Fish, J.) (noting that the contract provided that (1) the law of the forum state governed suits to the contract, (2) the defendant was required to repurchase the servicing of the loan in the event of a misrepresentation or breach of warranty, (3) the defendant was required to indemnify the plaintiff against losses sustained as a result of a misrepresentation or breach of warranty, (4) the defendant was required to provide proof of mortgage errors and omissions insurance and fidelity insurance to the plaintiff on request, and (5) the defendant was required to deliver audited financial statements each year to the plaintiff) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S.

-6-

462, 479-80 (1985)). In *Consolidated Cos., Inc. v. Kern*, the court found, based on facts similar to those extant here, that plaintiff had shown minimum contacts sufficient to exercise personal jurisdiction in Louisiana over a contract claim directly related to a guaranty. 99-2704 Section "L"(3), 2000 U.S. Dist. LEXIS 10878, at *9-10 (E.D. La. July 25, 2000) (noting that (1) the defendant's execution of the guaranty was completely voluntary, (2) the guaranty was entered into with a Louisiana company, and (3) the guaranty explicitly stated that the defendant agreed to execute the guaranty in order to induce the Louisiana company to provide credit to the borrower). Here, (1) the law of Texas governs the Guaranty and Loan Agreement, (2) the Guaranty requires Lurie to fulfill the "Obligations" in the Loan Agreement, including the periodic mailing of various financial statements and tax returns to PlainsCapital and the mailing of other information regarding Lurie's assets and liabilities on request, (3) Lurie does not allege that the execution of the Guaranty was not voluntary, (4) the Guaranty was entered into with PlainsCapital, a Texas entity, and (5) the Guaranty expressly states that the delivery of the signed Guaranty was a condition precedent to Plaintiff providing the loan to KLM. Based on the factual similarities, the Court reaches the same conclusion as the courts in *Capstead* and *Kern*.[8]

---

[8]Lurie's trips to Texas following the formation of the Guaranty do not support specific jurisdiction because Plaintiff's contract claim does not arise from or relate to these trips. *See U.S. Restaurant Props. Operating L.P. v. Aloha Petroleum Ltd.*, 3:01-CV-0987-D, 2001 U.S. Dist. LEXIS 20109, at *9 (N.D. Tex. Dec. 5, 2001) (Fitzwater, J.). The record shows that each of Lurie's trips to Texas was for the purpose of meeting with representatives of PlainsCapital, at PlainsCapital's request, after problems began to develop with the repayment of KLM's loan obligations. If, in contrast, Lurie had traveled to Texas for the purpose of negotiating the KLM Note, Loan Agreement, or Guaranty, the trips could help Plaintiff establish specific jurisdiction over Lurie for Plaintiff's contract claim. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003); *Examination Mgmt. Servs.*, 2005 U.S. Dist. LEXIS 1579, at *10-11. Lurie has produced evidence that he did not assist in the negotiation of the Loan Agreement or Guaranty, and Plaintiff has not controverted it. As a result, *Central Freight Lines* and *Examination Management Services* are not germane to this Court's consideration of these

## B. Claims of Fraud and Fraudulent Inducement

The Court finds specific personal jurisdiction over Lurie for Plaintiff's tort claims. In *Calder v. Jones*, the Supreme Court found that a California court had personal jurisdiction over two newspapermen in a libel action, based on a defamatory article written in Florida that affected the plaintiff's reputation in California. *Calder v. Jones*, 465 U.S. 783, 789 (1984). "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). "Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

In his affidavit, Lurie states he forwarded current financial statements to PlainsCapital, in Dallas, before he signed the Guaranty. Because Lurie sent his financial statements to Dallas, it was foreseeable to Lurie that his allegedly fraudulent acts would cause harm in Texas.[9] Although this alone may be insufficient to confer specific jurisdiction over Lurie with respect to the fraud claim, it should be assessed as part of the analysis of Lurie's relevant contacts with the forum. *Panda Brandywine Corp.*, 253 F.3d at 869.

---

trips.

[9]In his deposition, Lurie testified that at the time he supplied his initial financial statement, he did not know the lending bank was based in Texas. Lurie argues that PlainsCapital has proffered no evidence to controvert this. The Court does not agree. Lurie states in his affidavit that he sent financial statements to PlainsCapital, and Brian Heflin, the Chairman of the DFW Region of PlainsCapital Bank, states in his affidavit that the financial statements were mailed to Texas. These two affidavits constitute evidence that Lurie sent financial statements to Texas. Lurie urges the Court to find that he did not *know* he was mailing the financial statements to Texas. The Court will not so conclude based on this record.

-8-

"When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska*, 195 F.3d at 213. PlainsCapital contends that Lurie deliberately misrepresented his assets in the financial statements he sent to Texas, and Plaintiff's fraud and fraudulent misrepresentation claims are premised on these alleged misrepresentations. Thus, with respect to Plaintiff's tort claims, Lurie has purposefully availed himself of Texas's benefits and protections. *See id.*; *see also Stelax Indus., Ltd. v. Donahue*, 3:03-CV-923-M, 2004 WL 733844, at *3 (N.D. Tex. Mar. 25, 2004) (Lynn, J.).

### C. Fairness Factors

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska*, 195 F.3d at 215. The interests to balance in this determination are "the burden on the defendant having to litigate in the forum, the forum state's interests in the lawsuit, the plaintiff's interests in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies." *Id.* To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, a defendant must make a "compelling case" against it. *Wien Air Alaska*, 195 F.3d at 215 (quoting *Burger King*, 471 U.S. at 477).

With respect to these claims, three factors weigh in favor of Plaintiff's assertion of personal jurisdiction. First, Lurie has not argued that he would be unduly burdened by having to litigate in this forum. Second, Texas has an interest in whether Lurie has committed tortious acts

-9-

directed to Plaintiff, and breached a contract with Plaintiff, whose principal place of business is in Texas. Third, Plaintiff has an interest in this case proceeding in Texas, where the Plaintiff is located. In factual scenarios similar to that extant here, other courts have found it fair to exercise jurisdiction over a nonresident guarantor. *See Marathon*, 653 F.2d at 923; *Goodman Co., L.P. v. A&H Supply, Inc.*, H-05-3093, 2005 U.S. Dist. LEXIS 30005, at *19-20 (S.D. Tex. Oct. 17, 2005) (Rosenthal, J.). Lurie has not made a "compelling case" that the exercise of jurisdiction over him offends traditional notions of fair play and substantial justice. Therefore, the Court will assert personal jurisdiction over Lurie. *See Stelax*, 2004 WL 733844, at *8.

## IV. CONCLUSION

Lurie's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

**SO ORDERED.**

December 14, 2005.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

-10-